# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| HOWARD BRUCHHAUSER, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>THE STARK COLLECTION AGENCY INC.,<br><br>　　　　　Defendant. | Case No.: 18-cv-741<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Howard Bruchhauer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that he engaged in a consumer transaction.

6. Defendant The Stark Collection Agency, Inc. ("SCA") is a debt collection agency with its principal offices at 6425 Odana Road, Madison, Wisconsin 53719.

7. SCA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. SCA is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. SCA is licensed as a collection agency by the Division of Banking in Wisconsin Department of Financial Institutions, pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. SCA is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

11. On or about April 12, 2018, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

12. The alleged debt referenced in Exhibit A arose from a series of open-end consumer credit transactions, made pursuant to a VISA credit card account issued by Prime Financial Credit Union ("PFCU").

13. Plaintiff opened and used the PFCU VISA credit card account only for personal, family, or household purposes, namely the day-to-day purchase of household goods and services.

14. Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

15. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

2

16. Upon information belief, Exhibit A was the first written communication that Defendant mailed to Plaintiff regarding this alleged debt.

17. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send within five days of the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice this office will obtain verification of the debt or obtain copy of a judgment and mail you a copy of such judgment or verification. If you request in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor if different from the current creditor.

Exhibit A.

18. Exhibit A also contains the following:

> Original Creditor: PRIME FINANCIAL CREDIT UNION
> Default Date: 06/12/2017
> Creditor Acct. No.: ■■■■1001
>
> . . .
>
> Principal: $1081.06
> TOTAL BALANCE DUE: $1081.06
> Date of last payment to Creditor: 11/18/2016

Exhibit A.

19. Exhibit A states that the "Original Creditor" of the alleged debt is PFCU, and that the "TOTAL BALANCE DUE" is $1081.06.

20. Exhibit A also states that the "Default Date" of the alleged debt is 06/12/2017.

21. Exhibit A also states that the "Date of last payment to Creditor" is 11/18/2016.

22. Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contains false and conflicting statements about the history of the account.

23. Assuming the "Date of last payment to Creditor" stated in Exhibit A is true, the alleged debt was last paid on November 18, 2016.

3

24. The unsophisticated consumer would understand the term "Default Date" to mean the date that the alleged debt first entered a delinquent status.

25. Assuming the alleged debt was last paid on November 18, 2016, it would have entered a delinquent status approximately six months before June 12, 2017, the "Default Date" stated in Exhibit A. *See, e.g., Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 835 (D.N.J. Mar. 21, 2011) ("A loan is considered 'delinquent' when it is past due 30 days or more.") (citing United States Government Accountability Office, Credit Cards: Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology, www.gao.gov/new.items/d09748.pdf at 5 (September 2009) ("GAO" Report")).

26. The "Default Date" stated in Exhibit A is approximately six months later than the date on which the alleged debt would have defaulted based on the "Date of last payment to Creditor" stated in Exhibit A. Upon information and belief, the "Default Date" referenced in Exhibit A is actually the date the alleged debt "charged off." *See, e.g., Chulsky*, 777 F. Supp. 2d at 835 ("[O]nce a consumer falls more than 180 days behind on paying a credit card debt, banks 'charge off' the account.").

27. The false delinquency date is material to the consumer because it has important implications for consumer credit reporting and the date on which the statute of limitations begins to run. *See Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 904-05 (N.D. Ill. June 30, 2015); *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1086-87 (N.D. Ill. July 7, 2014); *see also, e.g., Agosta v. InoVision, Inc.*, 2003 U.S. Dist. LEXIS 23889, at *13-15 (E.D. Pa. Dec. 16, 2003); *Brandon v. Fin. Accounts Servs. Team*, 701 F. Supp. 2d 990, 99-93 (E.D. Tenn. Mar. 24, 2010).

28. The false "default date" indicates to the consumer that the debt is more recent than it actually is, and that the statute of limitations would expire later that it actually would.

4

29. Moreover, Exhibit A is even more confusing and misleading because it references the debtor's credit report:

> This account may be reported to a Credit Bureau but no sooner than 90 days.

Exhibit A.

30. The statement that the "account may be reported . . . but no sooner than 90 days" is confusing and misleading to the unsophisticated consumer.

31. Exhibit A does not state when the "90 days" begins or whether it already began to run. Thus, the consumer would not know "from when" the account would be reported.

32. The unsophisticated consumer would be confused and misled about whether the representation in Exhibit A meant that the account "may be reported" but reporting cannot occur until 90 days after the "Default Date," in which case the account may already have been reported. Alternatively, the unsophisticated consumer would be confused and misled about whether the representation in Exhibit A meant that the account "may be reported" and that SCA would wait at least 90 days after the *letter* date to report the account. *See Johnson v. Enhanced Recovery Co., LLC*, 228 F. Supp. 3d 870, 875 (N.D. Ind. Jan 17, 2017):

> Johnson claims that telling her the delinquent account "may be reported" to a credit bureau was demonstrably false since the account had in fact already been so reported. This argument interprets "may" as an indication of an unrealized possibility. ERC counters that the word "may" means that it is *permitted* to report the delinquency.
>
> The word "may" is certainly used in both of those ways.

33. Plaintiff was confused and misled by Exhibit A.

34. The unsophisticated consumer would be confused and misled by Exhibit A.

35. Plaintiff had to spend time and money investigating Exhibit A.

5

*The FDCPA*

36. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS

6

139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

37. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

7

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

38. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

39. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

40. 15 U.S.C. § 1692e(8) specifically prohibits "communicating or threatening to communicate to any person credit information which is known to be false, including the failure to communicate that a disputed debt is disputed."

41. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect a debt."

### *The WCA*

43. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

44. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

45. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

46. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

47. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

48. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

49. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

50. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

9

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

51. Wis. Stat. § 427.104(1)(c) states that a debt collector may not: "Disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false."

52. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

53. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

54. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I -- FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Exhibit A contains false, deceptive, misleading, and confusing statements about the character of the debt, the date of delinquency and the date of default.

57. Exhibit A contains false, deceptive, misleading, and confusing statements about the account's reporting status.

58. Defendant violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(8), 1692e(10), and 1692f.

## COUNT II -- WCA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. <u>Exhibit A</u> contains false, deceptive, misleading, and confusing statements about the character of the debt and the date of delinquency.

61. <u>Exhibit A</u> contains false, deceptive, misleading, and confusing statements about the account's reporting status.

62. Defendant violated Wis. Stat. §§ 427.104(1)(c), 427.104(1)(g), and 427.104(1)(h).

## CLASS ALLEGATIONS

63. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) which stated a "Default Date" and a "Date of last payment to Creditor," (e) where the "Default Date" was more than six months after the "Date of last payment to Creditor," (f) and the letter in the form of <u>Exhibit A</u> was mailed between May 14, 2017 and May 14, 2018, (f) and was not returned by the postal service.

64. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

65. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

66. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

67. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

68. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

69. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 14, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com